1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FATTE ALBERTS, *a California partnership*,

Plaintiff,

v.

PIZZAMAN'S PAVILION and MICHAEL JENSEN,

Defendants.

No.  1:20-cv-00238-DAD-SKO

ORDER DENYING DEFENDANT JENSEN'S MOTION TO DISMISS

(Doc. No. 20)

18     This matter is before the court on the motion to dismiss this action for lack of subject

19  matter jurisdiction filed by *pro se* defendant Michael Jensen.  (Doc. No. 20.)  Pursuant to General

20  Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic and the

21  outbreak of the virus within this district, defendant Jensen's motion was taken under submission

22  on the papers.  (Doc. No. 23.)  For the reasons set forth below, his motion to dismiss will be

23  denied.

24                                          **BACKGROUND**

25     Plaintiff Fatte Alberts' first amended complaint ("FAC") alleges as follows.  Plaintiff is a

26  partnership based in Hanford, California.  (Doc. No. 19 ("FAC") at ¶¶ 3, 6.)  Defendant Jensen is

27  an Arizona resident who owns and operates defendant Pizzaman's Pavilion, which is an

28  /////

1

1   unincorporated business entity located in Mohave Valley, Arizona that designs and builds custom

2   trailers.  (*Id.* at ¶¶ 4, 5, 7.)

3          In November 2018, the parties entered into a contract wherein defendant Jensen agreed to

4   design and build "a custom-built mobile wood-fired pizza trailer" ("the trailer") for plaintiff.  (*Id.*

5   at ¶¶ 8–9.)  Plaintiff intended to use the trailer for its business during the catering season, which

6   begins in May of each year.  (*Id.* at ¶ 11.)  The contract required plaintiff to pay $40,000.00 for

7   the trailer and an additional final payment at the time the trailer was picked up in the form of

8   plaintiff giving defendant Jensen possession of a different trailer that plaintiff owned called the

9   "Pizza Pup" trailer.  (*Id.* at ¶ 9.)  Pursuant to the parties' contract, plaintiff made twelve payments

10  totaling $37,570.00 to defendant Jensen.  (*Id.* at ¶ 9, 10.)  Plaintiff also shipped fryer equipment

11  valued at $4,000.00 to defendant to be installed into the trailer.  (*Id.* at ¶ 13.)  Defendant Jensen

12  represented to plaintiff that the trailer would be completed by May 2, 2019.  (*Id.* at ¶ 12–14.)  As

13  of February 14, 2020, the date plaintiff commenced this action, the trailer had still not been

14  completed by defendants.  (*Id.* at ¶ 16.)  Plaintiff alleges that as a result of defendant Jensen's

15  failure to procure the trailer in time for plaintiff's catering season, plaintiff "suffered lost

16  profits . . . totaling approximately fifty-eight thousand, five hundred and fifty dollars

17  ($58,550.00)," and provides a list of over forty events between May 2019 and October 2019 that

18  it was unable to cater, as well as the amount of its lost profits from each event "[b]ased on prior

19  sales history."  (*Id.* at ¶ 17.)  In its FAC, plaintiff asserts claims for fraud, breach of contract, and

20  a common count for money had and received.  (*Id.* at 5–7.)

21         On August 13, 2020, defendant Jensen, proceeding *pro se*, filed the pending motion to

22  dismiss this action due to lack of subject matter jurisdiction.[1]  (Doc. No. 20.)  Therein, defendant

23  Jensen primarily argues that the amount in controversy in this action does not exceed $75,000.00,

24  and he also appears to request that this case be heard in the "proper court of jurisdiction," arguing

25  that a court in Arizona "will have better ac[c]ess to witnesses and justice can be reached in

26  ───────────────────

27  [1]  The pending motion is not brought on behalf of defendant Pizzaman's Pavilion.  (*See* Doc. No. 20.)  The court notes that although defendant Pizzaman's Pavilion appears on the docket as representing itself, this entry on the docket is in error.  In keeping with federal law, Local Rule

28  183 provides that "[a] corporation or other entity may appear only by an attorney."

1   Arizona." (*Id.* at 1–2.)  The court will *sua sponte* construe defendant's argument in this regard as

2   a motion to change venue pursuant to 28 U.S.C. § 1404(a).  *See Eldridge v. Block*, 832 F.2d 1132,

3   1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe

4   the 'inartful pleading' of pro se litigants.") (citing *Boag v. MacDougall*, 454 U.S. 364, 365

5   (1982)).

6     On September 1, 2020, plaintiff filed its opposition to the pending motion, and on

7   September 14, 2020, defendant Jensen filed his reply thereto.  (Doc. Nos. 26, 27.)

8   **LEGAL STANDARDS**

9     "When a defendant moves to dismiss a complaint or claim for lack of subject matter

10   jurisdiction, the plaintiff bears the burden of proving that the court has jurisdiction to decide the

11   claim." *Cannon v. Harco Nat'l Ins. Co.*, No. 09-cv-00026-MMA-JMA, 2009 WL 10725673, at

12   *2 (S.D. Cal. July 16, 2009) (citing *Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d

13   730, 733 (9th Cir. 1979)).

14     A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of

15   Civil Procedure 12(b)(1) "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d

16   1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations

17   contained in a complaint are insufficient on their face to invoke federal jurisdiction."  (*Id.*) (citing

18   *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  "The district court resolves a facial attack as

19   it would a motion to dismiss under Rule 12(b)(6):  [a]ccepting the plaintiff's allegations as true

20   and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the

21   allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*,

22   749 F.3d 1117, 1121 (9th Cir. 2014).  As is true in evaluating a Rule 12(b)(6) motion, the court

23   need not assume the truth of legal conclusions cast in the form of factual allegations. *Warren v.*

24   *Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  "By contrast, in a factual

25   attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise

26   invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.  Notably, courts may

27   consider extrinsic evidence when evaluating factual attacks and the court may review "*any*

28   evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of

3

1  jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (emphasis added)

2  (citing *Land v. Dollar*, 330 U.S. 731 (1947)).

3        Pursuant to 28 U.S.C. § 1332, where, as here, the parties in an action are citizens of

4  different states, "[t]he district courts shall have original jurisdiction of all civil actions where the

5  matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."

6  "When a plaintiff files suit in federal court, [courts] use the 'legal certainty' test to determine

7  whether the complaint meets § 1332(a)'s amount in controversy requirement." *Naffe v. Frey*, 789

8  F.3d 1030, 1039 (9th Cir. 2015).  Under this test, "[t]he sum claimed by the plaintiff controls so

9  long as the claim is made in good faith."  *Crum v. Circus Enters*, 231 F.3d 1129, 1131 (9th Cir.

10  2000); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) ("The rule

11  governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the

12  law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently

13  made in good faith.").  As the Ninth Circuit has explained in this regard,

14

15  > the legal certainty test makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement.  Only three situations clearly meet the legal certainty standard:  1) when the terms of a contract

16  > limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable;

17  > and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction.

18

19  *Naffe*, 789 F.3d at 1040 (internal quotation marks and citations omitted).  The amount in

20  controversy "includes claims for general and special damages (excluding costs and interests),

21  attorneys fees if recoverable by statute or contract, and punitive damages, if recoverable as a

22  matter of law."  *Pulera v. F & B, Inc.*, No. 2:08-cv-00275-MCE-DAD, 2008 WL 3863489, at *2

23  (E.D. Cal. Aug. 19, 2008).

24  **DISCUSSION**

25  **A.      Amount in Controversy**

26        Plaintiff contends that the amount in controversy alleged in its FAC exceeds the

27  jurisdictional threshold of $75,000.00.  Specifically, plaintiff alleges that the twelve payments it

28  made to defendant Jensen in the total amount of $37,570.00, plus the value of the fryers plaintiff

4

1   shipped to defendant Jensen in the amount of $4,000.00, plus the "significant amount of business

2   opportunity" it lost "in being unable to utilize the Trailer during [its] catering season," which

3   totaled $58,550.00, added together exceed $75,000.00.  (FAC at ¶¶ 17, 18.)

4          In the pending motion, defendant Jensen contends that the amount in controversy in this

5   action does not exceed $75,000.00 because:  (1) actual damages "are under $35,000, on either

6   side"; (2) plaintiff did not lose any profits because it "still had use of the trailer meant for trade,"

7   the Pizza Pup trailer; (3) plaintiff only completed "50% or so of the payments with a balance of

8   $23,800"; (4) "[t]he evidence will show that the Plaintiff worked the events listed" in the FAC

9   and therefore "has not suffered a loss of $58,000"; (5) "the ev[i]dence will also show industry

10  standard on profits are clearly exag[g]erated by the Plaintiff."  (Doc. No. 20 at 1.)  Defendant

11  Jensen has attached to his motion an email correspondence, a press release, and other documents

12  which purportedly demonstrate that plaintiff's allegations with respect to its lost profits are not

13  true.  (*See id.* at 3–8.)

14         With respect to defendant Jensen's contention that the number of payments plaintiff made

15  pursuant to the parties' contractual agreement is less than what it has alleged in its FAC (Doc. No.

16  20 at 1), he offers no evidence or corroboration for his claim in this regard.  As noted above, at

17  this juncture, the court accepts plaintiff's allegations with respect to the amount in controversy so

18  long as they appear to be alleged in good faith.  Here, the court finds that plaintiff has made its

19  allegations regarding its payments to defendants in good faith.  In the absence of evidence

20  suggesting otherwise, the court is not persuaded by defendant Jensen's contention in this regard.

21         The court is similarly not persuaded by defendant Jensen's contention that plaintiff did not

22  lose any profits because it still had use of the Pizza Pup trailer.  In its opposition to the pending

23  motion, plaintiff does not explicitly address defendant Jensen's argument in this regard or assert

24  that it did not in fact use the Pizza Pup trailer.  Although plaintiff's allegations imply that it did

25  not transfer possession of the Pizza Pup trailer to defendant Jensen (because the transfer was to

26  occur at the time the new trailer was picked up and that trailer was allegedly never completed by

27  defendant), it does not necessarily follow that plaintiff was still using the Pizza Pup trailer.

28  Moreover, even if plaintiff was still using the Pizza Pup, that does not necessarily mean that

5

1    plaintiff did not lose profits as a result of not having the new trailer it had contracted for instead

2    of the Pizza Pup.  In the absence of any evidence that plaintiff was still using the Pizza Pup trailer

3    and that because of that use it was not losing profits during the relevant time period, the court

4    must accept plaintiff's allegations with respect to the amount in controversy so long as they

5    appear to be alleged in good faith.  Here, again, the court finds that plaintiff's allegations

6    regarding lost profits have been made in good faith.

7            With respect to defendant Jensen contention that the "evidence" demonstrates that

8    plaintiff did not lose profits in the amount it is claiming in the FAC, his reliance on the documents

9    he has attached to the pending motion is unavailing.  As an initial matter, the documents are not

10   properly authenticated because defendant Jensen did not provide a declaration or otherwise attest

11   to their authenticity.  *See* Fed. R. Evid. 901 (Authenticating or Identifying Evidence).

12   Nonetheless, even if the court were to consider the documents in light of defendant Jensen's *pro*

13   *se* status, the attached documents do not establish that the amount in controversy in this action is

14   less than $75,000.00.  The first document appears to be email correspondence between non-

15   parties and in no way calls into question plaintiff's allegations with respect to the lost profits it

16   experienced. (*See* Doc. No. 20 at 3.)  The next document is a press release that notes that Main

17   Street Hanford's Thursday Night Market Place was cancelled for the week of August 15, 2019, an

18   event that plaintiff alleges it was unable to cater for due to defendant Jensen not procuring the

19   trailer in time.  (*Id.* at 3.)  Even assuming that the event in question was cancelled, plaintiff only

20   alleges lost profits of $600.00 from that event (*see* FAC at ¶ 17).  Thus, removing that amount of

21   lost profits from the alleged $58,550.00 total in lost profits results in a new total of $57,950.00,

22   which when added to the value of the fryer equipment and the twelve payments plaintiff alleges it

23   made to defendant Jensen, in total still exceeds $75,000.00.  Next, defendant Jensen relies on two

24   documents which purportedly demonstrate that plaintiff claims it was unable to cater two events

25   on October 12, 2019 that occurred at the same time.  (*See* Doc. No. 20 at 6–7.)  A closer review

26   of those documents, however, reveals that the first event took place from 10:00 a.m. to 4:00 p.m.,

27   whereas the second event began at 5:00 p.m. and ended at 10:00 p.m.  (*See id.*)  Thus, the

28   document attached to defendant's motion does not suggest that plaintiff would have been unable

6

1    to cater both events on that date.  Finally, defendant Jensen relies on what appears to be an article

2    regarding food trucks in support of his argument.  (*See id.* at 8.)  That article asks questions like

3    "How Much do Food Trucks Make a Year?"  Defendant Jensen's reliance on this document is

4    also clearly unavailing.  Setting aside that defendant Jensen does not explain how the article in

5    any way calls into question plaintiff's allegations with respect to its lost profits, the fact that the

6    average food truck makes a certain amount of profit does not mean that plaintiff did not suffer the

7    losses it is alleging in the FAC.

8            Accordingly, viewing the allegations in its FAC in the light most favorable to plaintiff, as

9    it must, the court concludes that plaintiffs has sufficiently alleged that the value of its claims in

10   this action exceeds $75,000.00.  Therefore, the court will deny defendant Jensen's motion to

11   dismiss this action for lack of subject matter jurisdiction.

12   **B.      Motion to Change Venue**

13           The court next addresses what it has construed as defendant Jensen's motion to change

14   venue.

15           Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other

16   district or division where it might have been brought" for the convenience of parties and

17   witnesses and in the interest of justice.  "[T]he purpose of [§ 1404(a)] is to prevent the waste of

18   time, energy and money and to protect litigants, witnesses and the public against unnecessary

19   inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal

20   quotation marks and citation omitted).  "Section 1404(a) is intended to place discretion in the

21   district court to adjudicate motions for transfer according to an 'individualized, case-by-case

22   consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29

23   (1988) (quoting *Van Dusen*, 376 U.S. at 622).  District courts employ a two-step analysis when

24   determining whether to transfer an action.  *Robert Bosch Healthcare Sys., Inc. v. Cardiocom,*

25   *LLC*, No. 14-cv-1575-EMC, 2014 WL 2702894, at *3 (N.D. Cal. June 13, 2014).  "A court must

26   first consider the threshold question of whether the case could have been brought in the forum to

27   which the moving party seeks to transfer the case."  *Park v. Dole Fresh Vegetables*, Inc., 964 F.

28   Supp. 2d 1088, 1093 (N.D. Cal. 2013); *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414

1   (9th Cir. 1985) ("In determining whether an action 'might have been brought' in a district, the

2   court looks to whether the action initially could have been commenced in that district."). "Once

3   the party seeking transfer has made this showing, district courts have discretion to consider

4   motions to change venue based on an 'individualized, case-by-case consideration of convenience

5   and fairness.'" *Park*, 964 F. Supp. 2d at 1093 (quoting *Stewart Org.*, 487 U.S. at 29).

6          As an initial matter, the court concludes that defendant Jensen's motion to change venue

7   does not establish that this action could have been brought in the forum to which he is seeking to

8   transfer the case.  This conclusion is based in large part on the fact that defendant Jensen does not

9   explain which forum he wishes to transfer this case to, or even what he means by "an Arizona

10  Court."  *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)

11  ("The burden is on the moving party to show that transfer is appropriate.").

12         However, even if the court were to proceed to step two of the analysis, the court would

13  find that defendant Jensen has not met his burden to show that transfer is appropriate here.

14  Defendant Jensen argues that a court in Arizona is "the proper court of jurisdiction" because "[a]n

15  Arizona Court will have better access to witnesses and justice can be reached in Arizona," (Doc.

16  No. 20 at 2), but is not clear what witnesses he is referring to, much less why this court would not

17  have access to the same witnesses if need be.  *See Williams v. WinCo Foods, LLC*, No. 2:12-cv-

18  02690-KJM-EFB, 2013 WL 211246, at *4 (E.D. Cal. Jan. 10, 2013) ("To demonstrate

19  inconvenience to witnesses, the moving party should produce information regarding the identity

20  and location of the witnesses, the content of their testimony, and why such testimony is relevant

21  to the action."); *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1214–15 (S.D. Cal. 2013)

22  (the ease of access to evidence is "is not a predominate concern in deciding venue as advances in

23  technology have made it easy for documents to be transferred to different locations").  Defendant

24  Jensen also asserts that the contract in question was originated in Arizona, that he resides and

25  does business there, that the trailer is currently being built there, and that all payments were

26  deposited and transferred to a bank account in Arizona.  (*Id.* at 1.)  Defendant Jensen does not,

27  however, explain why any of these alleged facts mean that litigating this action in Arizona would

28  prevent the waste of time, energy and money or protect litigants, witnesses and the public against

1   unnecessary inconvenience and expense.  Moreover, plaintiff sued defendants in the Eastern

2   District of California, presumably for its own convenience given that it is located within the

3   boundaries of this district and conducts its catering business in California.  In general, courts

4   considering motions for change of venue give significant deference to a plaintiff's choice of

5   forum.  *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *see also Byler v. Deluxe Corp.*,

6   No. 16-cv-493-AJB-JLB, 2016 WL 8669404, at *13–14 (S.D. Cal. Aug. 18, 2016).

7           Accordingly, the court will deny defendant Jensen's motion to change venue.

8                                   **CONCLUSION**

9           For all of the reasons set forth above, defendant Jensen's motion to dismiss this action for

10  lack of subject matter jurisdiction and, alternatively, to change venue (Doc. No. 20) is denied.

11  IT IS SO ORDERED.

12      Dated:   **October 30, 2020**

13                                          UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          9